1

2

3

4

5        IN THE UNITED STATES DISTRICT COURT FOR THE

6              EASTERN DISTRICT OF CALIFORNIA

7

8    SARAH GARCIA, a minor, by and          )      CIV F 06-940 AWI  LJO
     through her Guardian Ad Litem, Jeff    )
9    Shepard,                               )      ORDER ON COUNTY
                                            )      DEFENDANTS'S RULE
10               Plaintiff,                 )      12(b)(6) and RULE 12(e)
                                            )      MOTIONS
11       v.                                 )
                                            )
12   BERTHA GONZALEZ, JUAN                  )
     ERNESTO, FRESNO COUNTY,                )
13   FRESNO COUNTY DEPARTMENT OF            )
     CHILDREN AND FAMILY SERVICES,          )
14   LUPE OROZCO, RENEE RAMIREZ,            )
     ERNIE RUSSEL, YOLANDA EROS,            )
15   individuals and as employees of the   )
     County of Fresno, and DOES 1-250,     )
16   inclusive,                             )
                                            )
17               Defendants.                )
                                            )
18   _____ )

19   _____

20

21        This case stems from a decision to place minor Plaintiff Sarah Garcia ("Sarah") in the

22   custody of Defendant Bertha Gonzalez ("Gonzalez"), who is Sarah's brother's grandmother but

23   no relation to Sarah.  While in the custody of Gonzalez, Sarah suffered a variety of physical

24   injuries, including brain damage.  Sarah has brought suit against Gonzalez, Fresno County ("the

25   County") and numerous County employees (collectively, "County Defendants") for state and

26   federal law civil rights violations, negligence, negligence per se, battery, and assault.  The

27   County Defendants move to dismiss Sarah's negligence and civil rights claims and also move for

28   a more definite statement.  The motions will be granted in part and denied in part.

**FACTUAL BACKGROUND**

From the first amended complaint ("FAC"),[1] Sarah was born to Michelle Kelley ("Kelley") on January 19, 2001.  Sarah became known to the Fresno County Department of Children and Family Services ("CFS") on July 7, 2003, when an allegation of general neglect was made against Kelley and substantiated on July 8, 2003.  CFS workers ordered Kelley into voluntary family maintenance, including a substance abuse treatment program, random drug testing, a parenting class and other services pursuant to California Welfare and Institutions Code ("Welfare Code") §§ 16501 and 16506, but did not open a dependency case under Welfare Code § 300.  Over the next few months, CFS frequently monitored the situation and Kelley's progress.  However, Kelley continued to "test dirty" and refused to comply with reasonable CFS directives.

On November 21, 2003, Kelley informed her CFS worker that she would no longer engage in the drug treatment or other services offered.  Kelley proposed as a "case plan" having Gonzalez be the guardian of her children, to whom she would turn over custody.  Gonzalez was Sarah's brother's grandmother, and Gonzalez is not related to Sarah.  On November 24, 2003, the County Defendants held another staffing meeting concerning Kelley's plan to leave her children (Sarah and her brother) with Gonzalez.  The County Defendants told Kelley that her plan would not work because Gonzalez would not be approved to be a guardian.  Gonzalez's extensive criminal history and previous CPS referrals concerning her own children rendered her unfit to be appointed a guardian by the dependency court.  Gonzalez had numerous prior CFS referrals for general neglect and for allegations of general abuse, physical violence and neglect, a number of which were sustained, and her children were born under the influence of various street drugs.  Despite Gonzalez's legal ineligibility to retain custody, Sarah was placed with Gonzalez.[2]

---

[1]Since this is a Rule 12(b)(6) motion, the Court assumes that these allegations are true.  Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).

[2]Sarah also alleges that Welfare Code § 16501.1(e) mandates that a case plan be comprehensive enough to meet juvenile dependency proceedings requirements, that § 16501.1(f)(13) requires documentation of steps taken to find an appropriate and willing relative if placement in another home is the goal, and that § 16507.5 requires that, in the context of a voluntary placement plan like the one applicable to Sarah, the responsibility for the care,

The County Defendants, upon realizing that Gonzalez was unfit to act as a guardian, counseled Kelley and Gonzalez on how to avoid dependency court scrutiny of Kelley's plan to appoint Gonzalez as guardian, which they knew would not be approved, and how to evade the protections of the law designed to ensure that Sarah was placed in a "safe home" as contemplated by the Welfare Code.  Both Kelley and Gonzalez were advised by County Defendants that they should avoid pursuing a guardianship in the dependency court and that they should attempt to transfer custody in the family court since the dependency court investigators would discover Gonzalez's prior history and refuse to allow Sarah to be placed with Gonzalez.  As part of the plan, County Defendants would not intervene or bring to the family court's attention their knowledge of Gonzalez's unfitness.

In disregard of duty, Sarah was placed with Gonzalez.  On the day that Sarah was placed with Gonzalez, both Gonzalez and Kelley tested positive for controlled substances (opiates and methamphetamine).   Sarah stayed at Gonzalez's home until CFS removed her on September 4, 2004.

Prior to September 4, 2004, the County Defendants closed the case file on March 29, 2004.  At the time they did so, County Defendants knew that Kelley was unfit due to continued drug use, that Kelley never complied with her plan by transferring legal custody to Gonzalez, that Sarah remained in the physical custody of Gonzalez, and that Gonzalez was unfit by the County Defendant's standards to have physical custody of Sarah.

On April 14, 2004, Sarah was taken to the hospital with bruises all over her body, her hair had been pulled out and she had red, dime-sized circles all over her head.  Sarah was much smaller than normal and appeared to be very fragile.  Sarah was placed in a half body cast and admitted to the hospital.  CFS staffers did not inform police and hospital personnel of the prior history of alleged abuse by Gonzalez.  Hospital personnel documented that plaintiff had her head

supervision, support, etc. of the minor is with the social worker who may place the minor with an approved home of a relative or the approved home of a non-relative extended family member.

3

shaved irregularly, she was disheveled, her leg was broken, she had multiple bruises on her lower back, head, chest and arms and she looked small and fragile, isolated, and socially delayed to the attending physician.  Sarah also had a previously healed fracture, which had not been treated, to one foot.  Thereafter, Sarah was returned to Gonzalez.

Subsequently, it was discovered that Gonzalez's son, who had a warrant outstanding for murder, was living in the residence.  Nevertheless, Sarah's placement remained the same.  Further, it was documented that Sarah was beaten regularly with a belt by Gonzalez.  Sarah has sustained brain damage, numerous broken bones, and physical and other injuries, the full extent of which have not yet been realized.

Sarah filed suit in state Court against the County Defendants, Gonzalez, and Ernesto, and the County Defendants subsequently removed to this Court.  In the first amended complaint, Sarah brings six causes of action.  Sarah alleges state law general negligence, negligence per se, California Civil Code § 52.1, and 42 U.S.C. § 1983 causes of action against the County Defendants, and alleges state law general negligence, state law torts of intentional assault and intentional batter, and California Civil Code § 52.1 against Gonzalez and Ernesto.  The County Defendants have filed a Rule 12(b)(6) motion to dismiss all claims against them, or, in the alternative, move for a more definite statement under Rule 12(e).  For the reasons that follow, the County Defendants's Rule 12(b)(6) motion will be granted in part and denied in part, and the Rule 12(e) motion will be denied.

**LEGAL STANDARD**

**Rule 8(a)**

Federal Rule of Civil Procedure 8(a) sets the pleading standard for claims for relief.  "Under the liberal rules of pleading, a plaintiff need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Sagana v. Tenorio, 384 F.3d 731, 736 (9th Cir. 2004) (quoting Fed. R. Civ. P. 8(a)).  This rule does "not require a claimant to set out in

4

detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957).  The

pleadings need only give the opposing party fair notice of a claim and the claim's basis.  Conley,

355 U.S. at 47; Sagana, 384 F.3d at 736; Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001).

47).  The pleadings are also to "be construed as to do substantial justice," and "no technical

forms of pleading . . . are required."  Fed. Rules Civ. Pro. 8(e)(1), 8(f); Sagana, 384 F.3d at 736;

Fontana, 262 F.3d at 877.  "Specific legal theories need not be pleaded so long as sufficient

factual averments show that the claimant may be entitled to some relief."  Fontana, 262 F.3d at

877; American Timber & Trading Co. v. First Nat'l Bank, 690 F.2d 781, 786 (9th Cir. 1982).

### Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

This rule provides for dismissal of a claim if, as a matter of law, "it is clear that no relief could be

granted under any set of facts that could be proved consistent with the allegations."  Neitzke v.

Williams, 490 U.S. 319, 327 (1989); Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480,

1484 (9th Cir. 1995).  Thus, the determinative question is whether there is any set of "facts that

could be proved consistent with the allegations of the complaint" that would entitle plaintiff to

some relief.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  In reviewing a complaint

under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light

most favorable to the non-moving party.  Newman v. Sathyavaglswaran, 287 F.3d 786, 788 (9th

Cir. 2002); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court must also assume

that general allegations embrace the necessary, specific facts to support the claim.  Smith v.

Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified

Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994).  But, the Court is not required "to accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also

Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Western Mining

Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Courts will not "assume the truth of legal

conclusions merely because they are cast in the form of factual allegations."  Warren, 328 F.3d at

1139; Western Mining Council, 643 F.2d at 624.  Furthermore, Courts will not assume that

plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . .

laws in ways that have not been alleged."  Associated General Contractors of California, Inc. v.

California State Council of Carpenters, 459 U.S. 519, 526 (1983).

       In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited

to reviewing only the complaint, but may review materials which are properly submitted as part

of the complaint and may take judicial notice of public records outside the pleadings.  See Lee v.

City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d

1476, 1479 (9th Cir. 1996); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

absence of sufficient facts alleged under a cognizable legal theory.  Navarro v. Block, 250 F.3d

729, 732 (9th Cir. 2001); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend

even if no request to amend the pleading was made, unless it determines that the pleading could

not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th

Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  In other

words, leave to amend need not be granted when amendment would be futile.  Gompper v.

VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## DEFENDANT'S MOTION TO DISMISS

       County Defendants argue that dismissal of Sarah's substantive due process claim and

state law claims are appropriate.

       1.     42 U.S.C. § 1983 Claim for Violation of 14th Amendment Due Process Rights

*Defendants's Argument*

       County Defendants argue that Sarah alleges she was deprived of her 14th Amendment

6

rights because she allowed to be placed with an unfit individual and was not removed once it was

learned that she was injured.  Sarah alleges that her mother entered into a voluntary family

maintenance plan, Sarah's mother no longer wished to participate and instead wished to place

Sarah with Gonzalez, the County Defendants closed their file on March 29, 2004, and

subsequently Sarah suffered injury.  County Defendants rely on *DeShaney v. Winnebago County*,

489 U.S. 189 (1989) for the proposition that a governmental entity has no duty to protect persons

from the conduct of private individuals.  "If the due process clause does not require the State to

provide its citizens with particular protective services, it follows that the State cannot be held

liable under the [Due Process] Clause for injuries that could have been averted had it chose to

provide them."  DeShaney, 489 U.S. at 196-97.  Here, it is not the County or any of its employees

who inflicted the harm on the plaintiff, but rather the plaintiff's own mother and purported

grandmother.  As such, plaintiff cannot state a cause of action based on the Fourteenth

Amendment.  Additionally, Sarah has not alleged that County Defendants acted with deliberate

indifference, as required by the Fourteenth Amendment.

> *Plaintiff's Opposition*[3]

Sarah argues there is an exception to *DeShaney* when government action creates or

exposes a person to danger which she would not have otherwise faced.  Further, there is a due

process right to access to the courts.  In the operative complaint, it is alleged that Gonzalez was

known to be an unfit caregiver since she was known to have a prior criminal record and past

allegations of child abuse brought against her.  Despite this knowledge of Gonzalez, County

Defendants placed Sarah with Gonzalez.  This conduct placed Sarah in a situation more

dangerous than the one in which they found her.  Additionally, County Defendants conspired

with Michelle Kelly to avoid dependency proceedings because they knew that Gonzalez would

not be approved by the dependency court.  Had Sarah received the protection provided by the

---

[3]Plaintiff filed exhibits as part of her opposition to the 12(b)(6) motion.  The Court does not intend to convert this 12(b)(6) motion into a Rule 56 motion for summary judgment and will not consider the extraneous evidence submitted.  See Fed. R. Civ. Pro. 12(b); Swedberg v. Marotzke, 339 F.3d 1139, 1146 (9th Cir. 2003).

juvenile dependency courts, she would not have suffered injury from Gonzalez because the dependency courts would not have allowed Gonzalez to have custody of Sarah.  Finally, the allegations as a whole are sufficient to infer deliberate indifference.

### Legal Standard

"It is well established that the Constitution protects a citizen's liberty interest in her own bodily security."  Kennedy v. Ridgefield City, 439 F.3d 1055, 1061 (9th Cir. 2006).  Nevertheless, the Fourteenth Amendment's Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation," and, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the due process Clause."  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196, 202 (1989).  There are two exceptions to this general rule.  Estate of Amos v. City of Page, 257 F.3d 1086, 1090 (9th Cir. 2001); Huffman v. County of Los Angeles, 147 F.3d at 1054, 1058 (9th Cir. 1998).  The first exception is the "special relationship" exception "when the State takes a person into its custody and holds him there against his will, the Constitution imposes some responsibility for that person's safety and general well-being."  Estate of Amos, 257 F.3d at 1090; Huffman, 147 F.3d at 1058-59.  The second exception is the "danger creation" exception that occurs when "state action affirmatively places the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced."  Kennedy, 439 F.3d at 1061.  The "danger creation" exception "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger."  Estate of Amos, 257 F.3d at 1091.  In determining whether an officer affirmatively places an individual in danger, courts do not look solely to the agency of the individual nor rest decisions on options that may or may not have been available to the individual.  Kennedy, 439 F.3d at 1062.  "Instead, [courts] examine whether the officers left the person in a situation that was more dangerous than the one in which they found him."  Id.; Munger v. City of Glasgow, 227 F.3d 1082, 1086 (9th Cir. 2000).  "Thus, [courts] ask first whether . . . any affirmative actions by [an officer] placed [the plaintiff] in [a] danger that she otherwise would not have

8

1  faced." Kennedy, 439 F.3d at 1062.  If affirmative conduct exposes a plaintiff to a danger she

2  would not have otherwise faced, the second question is "whether the danger to which [the

3  officer] exposed [the plaintiff] was known or obvious, and whether [the officer] acted with

4  deliberate indifference to it." Id. at 1064.

5      *Discussion*

6          The crux of County Defendants's argument is that, as per *DeShaney*, they owed no duty

7  to Sarah to prevent harm from occurring at the hands of Gonzalez, a private actor.  Courts have

8  recognized "the right of a child in state custody not to be handed over by state officers to a foster

9  parent or other custodian, private or public, whom the state knows or suspects to be a child

10 abuser." Lewis v. Anderson, 308 F.3d 768, 773 (7th Cir. 2002); see also Norfleet v. Arkansas

11 Dep't of Human Servs., 989 F.2d 289, 292-93 (8th Cir. 1993); Doe v. New York City

12 Department of Social Services, 649 F.2d 134, 137 (2d Cir.1981).

13         In an Eighth Circuit opinion, a "danger creation" theory was discussed where children

14 were placed by a court in an abusive home as per the request of the children's aunt.[4]  Burton v.

15 Richmond, 370 F.3d 723 (8th Cir. 2004).  In rejecting the danger creation theory, the *Burton*

16 court explained, "The danger in this case--the placement in the Huffman home--was created by

17 Rhonda [the aunt] and Jean [the daughter]'s agreement as to the best custodial arrangement for

18 the family.  Neither DFS nor the individual defendants took an active role in creating this

19 placement;[5] they merely helped the family get recognition from the juvenile court of the changed

20

21

22

23

24         [4]The mother turned over custody of the children to an aunt, who then sought the assistance of social
   services to help prevent the mother from reobtaining custody.  Burton, 370 F.3d at 725-26.  Social services contacted

25 a juvenile officer, who recommended to a circuit court that physical custody of the children be given to the aunt and
   the aunt's daughter and son-in-law.  Id.  The circuit court followed the recommendation of the juvenile officer and

26 placed the children with the aunt and daughter, but ordered that social services monitor the children.  Id.

27         [5]The social services workers did not conduct a home study or criminal background check of the aunt or
   daughter prior to the circuit court's placement order.  Burton, 370 F.ed at 726.

28                                                   9

custodial arrangement.'"[6]  Burton, 370 F.3d at 728.

Similarly, an earlier Eighth Circuit opinion discussed a danger creation theory under *DeShaney*.  In *S.S., by and through Jervis v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000) (en banc), a child was taken into state custody, but two years later was returned to the custody of her father.  The *S.S.* court explained that in *DeShaney*, Joshua DeShaney was removed temporarily from his father's custody and was later returned.  S.S., 225 F.3d at 962.  *DeShaney* found no liability, in part, because Joshua DeShaney was returned to his father and thus, the state returned Joshua to the situation in which they found him.  Id.  Because S.S. was also returned to her father, that is, because she was returned to the position in which the state found her, the Eighth Circuit held that the state did not create greater risks to her than the ones to which she was originally exposed.  Id. at 963.

Here, the allegations suggest more than an inactive role by the County Defendants.  From the complaint, the County Defendants were monitoring Sarah's situation as a result of a substantiated claim of neglect.  See FAC at ¶ 11.  Kelley decided not to follow the programs ordered by the County Defendants and instead wanted to place Sarah with Gonzalez.  See id. at ¶ 13.  The County Defendants were aware that Gonzalez had her own history of child abuse and an extensive criminal record.  See FAC at ¶ 14.  Because of Gonzalez's history, the County Defendants knew that Gonzalez was unfit and legally ineligible to take custody of Sarah.  See id. at ¶¶ 14-15.  Despite this knowledge, the County Defendants conspired to place, and placed, Sarah with Gonzalez.  See id. at ¶¶ 30, 58.  The County Defendants conspired to avoid safeguards so that Sarah could be placed with Gonzalez.  See id. at ¶¶ 6, 17-18, 58.  Specifically, the County Defendants instructed Kelley to avoid the Dependency Court and instead go through the Family Court because the Family Court would not discover Gonzalez's history, and also agreed not to intervene or bring to the Family Court's attention Gonzalez's unfitness.  See id. at ¶

---

[6]Earlier in the opinion, the *Burton* Court held that social services did not have custody over the children and that the defendants "merely assisted a family to obtain the protection of the state court in order to prevent an unstable mother from demanding the return of her children."  Burton, 370 F.ed at 727.

18.  Thereafter, Sarah allegedly suffered injury at the hands of Gonzalez.  See id. at ¶¶ 24-25.

These allegations indicate that the County Defendants instructed Kelley and Gonzalez how to avoid judicial detection of Gonzalez's alleged unfitness, affirmatively agreed to not inform the Family Court of Gonzalez's unfitness, and actually placed Sarah with Gonzalez.  See FAC at ¶¶ 17-18, 30, 58.  Unlike *Burton*, these allegations show that the County Defendants played more than an inactive role in placing Sarah with Gonzalez, and unlike *S.S.*, did not leave or return Sarah in the position in which they found her.  At this stage in the proceedings, the Court must accept as true Sarah's allegations.  Given that the complaint indicates an active role by the County Defendants in placing Sarah with Gonzalez, and given the allegations regarding the known extensive criminal record and child abuse/neglect history of Gonzalez, the complaint suggests that the County Defendants created a danger of abuse because they placed Sarah in a more dangerous position (with Gonzalez) than the one in which they originally found her (with Kelley).  Cf. Kennedy, 493 F.3d 1061-62; Burton, 370 F.3d at 728; S.S., 225 F.3d at 962-63.

With respect to County Defendants's argument as to the requisite mental state, for Fourteenth Amendment substantive due process, a plaintiff must show that a defendant acted with deliberate indifference to a known or obvious danger while subjecting the plaintiff to it.  See Kennedy, 439 F.3d at 1064-65; L.W. v. Grubbs, 92 F.3d 894, 900 (9th Cir. 1996).  "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005); Mix v. Jones-Johnson, 2006 U.S. Dist. LEXIS 65054, 10-11 (D. Nev. 2006).  Here, the FAC does not expressly use the term "deliberate indifference."  However, the FAC alleges in part:

> Defendants intentionally and/or recklessly placed and conspired to place Sara in physical danger by allowing her to be placed with someone they knew to be unfit, by not removing Sarah from that home when her leg was broken and upon learning of prior injuries at that time, and by abandoning their care of Sarah, knowing that the "case plan" was not completed, that [Kelley] still used drugs and was unfit, and that the person having physical custody of Sarah was unfit.

FAC at ¶ 58.  The allegations made in this paragraph exceed the mental state required for

deliberate indifference.  Despite the fact that the term "deliberate indifference" is not used, the allegations are specific and sufficient for both deliberate indifference and intentional conduct.

In light of the above, County Defendants's 12(b)(6) motion to dismiss the Fifth Cause of Action is denied.[7]

2.      "Seventh" Cause of Action – California Civil Code § 52.1[8]

*Defendant's Argument*

County Defendants argue that in order to state a claim under California Civil Code § 52.1, a plaintiff must allege that a defendant interfered or attempted to interfere through threats, intimidation, or coercion with the exercise or enjoyment of a constitutional or statutory right. Because of the rule of *DeShaney*, Sarah cannot establish an underlying constitutional violation. Also, even if a violation can be established, Sarah has failed to allege that these defendants threatened acts of violence or performed violence against her.  There are no allegations that these defendants used threats, intimidation or coercion.

*Plaintiff's Opposition*

Sarah does not expressly address these arguments.

*Legal Standard*

California Civil Code § 52.1 proscribes persons, "whether or not acting under color of law, [from] interfer[ing] by threats, intimidation, or coercion, or attempt[ing] to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . ."  Cal. Civ. Code § 52.1(a).  Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion."  Jones v. Kmart Corp., 17 Cal.4th 329, 334 (1998); City and County of San Francisco v. Ballard, 136 Cal. App. 4th 381, 408 (2006); see also Venegas v. County of Los Angeles 32

---

[7]County Defendants do not expressly address Sarah's Fourteenth Amendment denial of access to courts claim.  Accordingly, the Court expresses no opinion on this claim at this time.

[8]This claim is mislabeled as the "seventh cause of action," as the FAC contains only six causes of action.

Cal.4th 820, 842 (2004).

*Discussion*

Plaintiff has not responded to the arguments of the County Defendants or pointed the Court to allegations that the County Defendants interfered with Sarah's rights through "threats, intimidation, or coercion."  Cal. Civ. Code § 52.1; <u>Venegas</u> 32 Cal.4th at 842; <u>Jones</u>, 17 Cal.4th at 334; <u>Ballard</u>, 136 Cal.App.4th at 408.  Further, the allegations in the complaint that could constitute "threats, intimidation, or coercion" are made against Gonzalez and Ernesto.  <u>See</u> FAC at ¶¶ 44-52.  Given the absence of argument in defense of this cause of action, the County Defendants's 12(b)(6) motion as to the "seventh" cause of action is granted.

3.      <u>First & Second Causes of Action – General Negligence & Negligence *Per Se*/Breach of Mandatory Duty</u>

*Defendants's Argument*

County Defendants argue that the negligence claims made against them are barred by California Government Code § 820.2 because the complained of conduct required the exercise of discretion.  The FAC alleges that the County Defendants "staffed" Sarah's case and made the decision to proceed by placing Kelley into voluntary family maintenance, as opposed to opening dependency proceedings under the Welfare Code.  Further, as part of their reply brief, County Defendants point to two California Courts of Appeal who have held that no mandatory duties are present under Welfare and Institution Code § 16501.1(c).  Thus, the granting of immunity and dismissal are appropriate under Government Code §§ 815.2 and 820.2.

Further, for the County to be liable under a negligence theory, liability must be specifically provided in a statute.  Plaintiff's first cause of action does not cite a statutory basis for holding the County directly liable for its own negligent acts.  Accordingly, claims of direct liability against the County in the first cause of action should be dismissed.

*Plaintiff's Opposition*

Sarah argues that the County Defendants are not entitled to immunity under Government

Code § 820.2 because she has alleged violations of ministerial mandatory duties and that the conduct involved were ministerial decisions and not policy decisions.   The FAC alleges that a case plan was required to be developed and had to be sufficiently comprehensive to satisfy any dependency proceedings under Welfare Code §16501.1(e).  However, the County Defendants failed to develop the required comprehensive plan.  Further, the County Defendants were mandated under Welfare Code § 16501.1(f)(13) to find an appropriate and willing relative.  The County Defendants failed to take adequate steps in finding an appropriate family placement for Sarah.  Further, the decision to place Sarah did not effect the Fresno County Children and Family Services as a whole and none of the County Defendants were involved in making basic policy decisions, instead, they were making personal and specific decisions as to Sarah.  Finally, the County Defendants failed to provide adequate care and supervision under Welfare Code § 16507.5.  Since the County Defendants made only ministerial decisions or failed to follow mandatory duties as alleged in the FAC, dismissal is not warranted.

### *Legal Standard*

"Except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person."  Cal. Gov't Code § 815.  The intent behind the statute "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances."  Zelig v. County of Los Angeles, 27 Cal. 4th 1112, 1127-28 (2002) (citation omitted).  Accordingly, the first step for purposes of § 815 is to "determine whether any statute imposes *direct* liability on [public entities]."  Eastburn v. Regional Fire Protection Authority, 31 Cal.4th 1175, 1179 (2003) (italics in original).  "All government tort liability must be based on statute."  Hoff v. Vacaville Unified Sch. Dist., 19 Cal.4th 925, 932 (1998).  The common law and general tort principles embodied in California

Civil Code § 1714,[9] which imposes a duty to act with reasonable care, are insufficient to create direct liability and bypass the immunity of Government Code § 815.  Eastburn, 31 Cal.4th at 1183; Munoz v. City of Union City, 120 Cal.App.4th 1077, 1112 (2004).

"A public entity may be directly liable for failure to discharge a mandatory duty."  County of Los Angeles v. Superior Court, 102 Cal.App.4th 627, 637 (2002), (hereinafter "Terrell R."). "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  Cal. Gov. Code § 815.6. Accordingly, § 815.6 contains a three-pronged test for determining whether direct liability may be imposed on a public entity: "(1) an enactment must impose a mandatory, not discretionary, duty; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered."  Terrell R., 102 Cal.App.4th at 638-39; Becerra v. County of Santa Cruz, 68 Cal.App.4th 1450, 1458 (1998); see also Haggis v. City of Los Angeles, 22 Cal.4th 490, 498-99 (Cal. 2000).  Under the first element, a statutory duty is mandatory when the duty imposed is obligatory, instead of discretionary or permissive, and requires, rather than merely authorizes or permits, that a particular action be taken or not taken. Haggis, 22 Cal.4th at 498; Morris v. County of Marin, 18 Cal.3d 901, 907 (1977).  "It is not enough . . . that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion."  Haggis, 22 Cal.4th at 498.  Under the second element, "the mandatory duty [must] be 'designed' to protect against the particular kind of injury the plaintiff suffered," and the plaintiff "must show the injury is one of the

---

[9]California Civil Code § 1714(a) provides in relevant part:
Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

consequences which the [enacting body] sought to prevent through imposing the alleged

mandatory duty." Haggis, 22 Cal.4th at 499; Hoff, 19 Cal.4th at 939.  "That the enactment

'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is

'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for

liability under section 815.6." Haggis, 22 Cal.4th at 499; Nunn v. State of California, 35 Cal. 3d

616, 626 (1984).  The inquiry under the second element "goes to the legislative purpose of

imposing the duty." Haggis, 22 Cal.4th at 499.  Whether a statute imposes a mandatory duty for

§ 815.6 purposes is a question of law for the court to decide.  Haggis, 22 Cal.4th at 499; Nunn,

35 Cal.3d at 624.

        With respect to negligence by an employee, a public employee is generally "liable for

injury caused by his act or omission to the same extent as a private person."  Cal. Gov't Code §

820(a); Hoff, 19 Cal.4th at 932.  Furthermore, Government Code § 815.2 "expressly makes the

doctrine of *respondeat superior* applicable to public employers."  Hoff, 19 Cal.4th at 932.  A

"public entity is liable for injury proximately caused by an act or omission of an employee of the

public entity within the scope of his employment if the act or omission would, apart from this

section, have given rise to a cause of action against that employee or his personal representative."

Cal. Gov't Code § 815.2(a).  Thus, § 815.2 "makes a public entity vicariously liable for its

employee's negligent acts or omissions within the scope of employment."  Eastburn, 31 Cal.4th

at 1180; Hoff, 19 Cal.4th at 932.  However, "liability of the employer only attaches if and when it

is adjudged that the employee was negligent," and, although "public entities always act through

individuals, that does not convert a claim for direct negligence into one based on vicarious

liability."  Munoz, 120 Cal.App.4th at 1113.  Further, a public entity is not vicariously liable if

the employee is immune from liability.  Cal. Gov't Code § 815.2(b); Richards v. Department of

Alcohol Beverage Control, 139 Cal.App.4th 304, 311 (2006).

        Government employees are "not liable for an injury resulting from his act or omission

where the act or omission was the result of the exercise of the discretion vested in him, whether

16

or not such discretion be abused." Cal. Gov't Code § 820.2.  Generally, "a discretionary act is one which requires the exercise of judgment or choice," Kemmerer v. County of Fresno, 200 Cal.App.3d 1426, 1437 (1988), but "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." Barner v. Leeds, 24 Cal.4th 676, 684-85 (2000).  Immunity under § 820.2 applies to those "basic policy decisions [which have] . . . been [expressly] committed to coordinate branches of government, and as to which judicial interference would thus be 'unseemly.'" Caldwell v. Montoya, 10 Cal.4th 972, 981 (Cal. 1995); Johnson v. State of California, 69 Cal.2d 782, 793 (1968).   "[T]here is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." Caldwell, 10 Cal.4th at 981; Johnson, 69 Cal.2d at 796.  Thus, for purposes of § 820.2, there is a distinction between basic policy or planning decisions and ministerial or operational decisions, the former enjoying immunity and the latter not.  See Barner, 24 Cal.4th at 685; Caldwell, 10 Cal.4th at 981.  Further, § 820.2 "immunity applies only to deliberate and considered policy decisions, in which a [conscious] balancing [of] risks and advantages . . . took place.  The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." Caldwell, 10 Cal.4th at 981; Johnson, 69 Cal.2d at 795 n.8.  In other words, a showing that "an employee's general course of duties is 'discretionary'" is insufficient; instead, the employee must offer "proof that the specific conduct that gave rise to the suit involved an actual exercise of discretion--a conscious balancing of risks and advantages." Caldwell, 10 Cal.4th at 981.  However, there is no requirement for a "strictly careful, thorough, formal, or correct evaluation. Such a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy." Id. at 983-84.  Accordingly, "claims of improper evaluation cannot divest a discretionary policy decision of its immunity."  Id. at 984 (citing Hardy v. Vial, 48 Cal.2d 577, 582 (1957)).

   *Discussion*

a.      First Cause of Action – General Negligence

The direct liability claims against the County are not properly pled.  For direct liability against the County, Sarah needs to identify the statute(s) that impose the duties that Sarah argues were allegedly breached by the County.  See Eastburn, 31 Cal.4th at 1179-80; Munoz, 120 Cal.App.4th at 1112-13.  As no statute is identified in the first cause of action that imposes these duties, the direct liability claims against the County in the first cause of action are dismissed.

With respect to the negligence claims against the County Employees, California Courts have held that decisions by social workers regarding the placement of a child in a foster home, investigations of abuse, and monitoring/supervising a child beyond the minimum level prescribed by statute are generally discretionary matters that depend on assessments of a variety of different factors and thus, are within the scope of § 820.2 immunity.  See Terrell R., 102 Cal.App.4th at 644-45; Becerra, 68 Cal.App.4th at 1462-66; Scott v. County of Los Angeles, 27 Cal.App.4th 125, 142 (1994); Ronald S. v. County of San Diego, 16 Cal.App.4th 887, 897 (1993); Alicia T. v. County of Los Angeles, 222 Cal.App.3d 869, 882-83 (1990).  Here, the FAC does not state that Sarah was in foster care and does not identify how the County Defendants failed to monitor Sarah, i.e. there are no allegations, such as in Scott, that the County Defendants did not conduct the required minimum number of home visitations.  The FAC does allege, however, that the County Employees negligently placed Sarah with Gonzalez, negligently monitored Sarah while she was with Gonzalez, and negligently supervised Sarah.  See FAC at ¶¶ 27-31.  Although not identical to the facts in other cases, the negligence allegations in the FAC against the County Defendants are similar to the areas in which California Courts have granted § 820.2 immunity.  Nevertheless, for § 820.2 to apply, the employee must have actually exercised discretion and must have made a considered decision, even if discretion is abused or a malicious decision is made.  See Cal. Gov't Code § 820.2; Caldwell, 10 Cal.4th at 981.

Claims may be dismissed at the pleading stage under § 820.2 if the allegations show that the defendants made a considered decision, irrespective of the correctness of that decision.  E.g.,

18

1   <u>Caldwell</u>, 10 Cal.4th at 984.  Where the allegations do not affirmatively show a considered

2   decision, dismissal of the complaint is not appropriate.  <u>E.g.</u> <u>Zuniga v. Housing Auth.</u>, 41

3   Cal.App.4th 82, 98-99 (1995).  At this stage, the Court is not convinced that the allegations show

4   that the County Defendants made a conscious decision in its placement, monitoring, and

5   supervision of Sarah.  That is, the Court is not satisfied that the FAC shows decisions that were

6   actually made through a "conscious balancing of risks and advantages."  <u>Caldwell</u>, 10 Cal.4th at

7   984.  The allegations in the complaint indicate that the County Defendants were aware that

8   Gonzalez was unfit and ineligible to take custody of Sarah.  This tends to show an abuse of

9   discretion, and although a close call, does not necessarily show that a balancing of risks and

10  advantages took place.  Construing the factual allegations in the manner most favorable to Sarah,

11  <u>see</u> <u>Newman</u>, 287 F.3d at 788, the FAC does not compel the conclusion that the County

12  Defendants made "discretionary decisions" for purposes of § 820.2.  As the evidence is

13  developed, § 820.2 may be applicable, but the FAC allegations are not sufficiently clear to grant

14  § 820.2 immunity.  Dismissal of the first cause of action against the County Defendants is

15  inappropriate at this time.[10]

16

17

_____

18  [10]Citing to *Jenkins v. County of Orange*, 212 Cal.App.3d 278, 283 (1989), County Defendants also argue
    that they are entitled to immunity under Government Code § 821.6.  Section 821.6 reads, "A public employee is not

19  liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of
    his employment, even if he acts maliciously and without probable cause" Cal. Gov't Code § 821.6.  "It has been held

20  that section 821.6 provides complete immunity for social workers (and a county) for their actions taken to
    investigate, declare children dependents of the county, and cause their removal from parental control."  <u>Ronald S.</u>, 16

21  Cal.App.4th at 899 (citing, *inter alia*, <u>Jenkins</u>, 212 Cal.App.3d at 283).  That is, social workers "have immunity
    under [§ 821.6] for their conduct in the initiation and prosecution of proceedings under sections 300 through 396 of

22  the Welfare and Institutions Code."  <u>Scott</u>, 27 Cal.App.4th at 143 (citing, *inter alia*, <u>Jenkins</u>, 212 Cal.App.3d at 283).
    However, the provision of "'child welfare services,' as defined in Welfare and Institutions Code section 16501 and

23  governed by part 4, sections 16000 through 16583, of division 9. . . . are separate and distinct from those quasi-
    prosecutorial functions which are entitled to Government Code section 821.6 immunity."  <u>Scott</u>, 27 Cal.App.4th at

24  144. (1994).  Here, the County Defendants have not adequately explained how § 821.6 is applicable in this case.
    The FAC complains about the placement, monitoring, and supervision of Sarah.  There are no allegations that the

25  County Defendants were acting pursuant to powers under Welfare Code § 300 et seq.  In fact, the FAC alleges that
    the County Defendants did not open a dependency proceeding under Welfare Code § 300 et seq, but instead acted

26  pursuant to Welfare Code §§ 16501 and 16506.  <u>See</u> FAC at ¶ 11.  In the absence of a more developed argument by
    the County Defendants, the Court will deny dismissal on the basis of § 821.6 immunity at this time.  <u>See</u> <u>Scott</u>, 27

27  Cal.App.4th at 144.

28                                                           19

2.      Second Cause of Action – Negligence *Per Se*/Breach of Mandatory Duties

The allegations made in the second cause of action are based on statutory duties that Sarah contends are mandatory that the County and its employees were required to follow.  A County is directly liable for breaches of mandatory duties as per § 815.6.  Where there has been a violation of a mandatory duty as envisioned by § 815.6, "public entities and their employees are not immune under Government Code sections 815.2 and 820.2 for violations of those duties."  Scott, 27 Cal.App.4th at 134-135.  Further, "section 821.6 does not provide a defense to a claim of breach of mandatory duty under section 815.6."  Roe v. State of California, 94 Cal.App.4th 64, 75 (2001).  The FAC expressly identifies Welfare Code §§ 16501.1(e),[11] 16501.1(f)(13),[12] and 16507.5[13] as statutes that create obligatory duties that were allegedly breached by the County

---

[11]In 2003, § 16501.1(e) provided, "The child welfare services case plan shall be comprehensive enough to meet the juvenile court dependency proceedings requirements pursuant to Article 6 (commencing with Section 300) of Chapter 2 of Part 1 of Division 2."

[12]The relevant events in this case took place in 2003 and 2004.  There were minor, changes made to § 16501.1(f)(13) that do not appear material for purposes of this case.  In 2003, § 16501.1(f)(13) provided:

If the case plan has as its goal for the child a permanent plan of adoption or placement in another permanent home, it shall include a statement of the child's wishes regarding their permanent placement plan and an assessment of those stated wishes. The agency shall also include documentation of the steps the agency is taking to find an adoptive family or other permanent living arrangements for the child; to place the child with an adoptive family, an appropriate and willing relative, a legal guardian, or in another planned permanent living arrangement; and to finalize the adoption or legal guardianship. At a minimum, the documentation shall include child-specific recruitment efforts, such as the use of state, regional, and national adoption exchanges, including electronic exchange systems, when the child has been freed for adoption.

[13]Section 16507.5 provides:

(a) When a minor is separated or is in the process of being separated from the minor's family under the provisions of a voluntary placement agreement, the county welfare department or a licensed private or public adoption agency social worker shall make any and all reasonable and necessary provisions for the care, supervision, custody, conduct, maintenance, and support of the minor, including medical treatment. Responsibility for placement and care of the minor shall be with the social worker who may place the minor in any of the following:
(1) The approved home of a relative or the approved home of a nonrelative extended family member as described in Section 362.7.
(2) A suitable licensed community care facility.
(3) With a foster family agency to be placed in a suitable licensed home or other family home which has been certified by the agency as meeting licensing standards.
(4) A home or facility in accordance with the federal Indian Child Welfare Act.
(b) The granting of a community care license or approval status does not entitle the caregiver to the placement of a

Defendants.  In their motion, however, the County Defendants do not expressly discuss

mandatory duties, § 815.6, or more importantly the three Welfare Code sections identified by

Sarah in the FAC.  That is, the County Defendants do not discuss whether the three identified

Welfare Code sections impose obligatory duties, whether the sections were intend to protect

against the kind of risk of injury suffered by Sarah, or whether breach of these possibly

obligatory duties was a proximate cause of Sarah's injuries.  See Terrell R., 102 Cal.App.4th at

638-39.  Instead, the County Defendants made an argument that was directed at "state law

claims" and contended that immunity under Government Code § 820.2 and § 821.6 was

appropriate.  However, none of the cited cases dealt with the identified Welfare Code sections,

and simply alleging that these immunities apply is alone insufficient for purposes of the second

cause of action because a breach of a § 815.6 mandatory duty is not entitled to immunity under §

820.2 or § 821.6.

    In their reply brief, the County Defendants rely on *Terrell R.* and *Becerra* to expressly

argue that the identified Welfare Code sections do not create mandatory duties.  Both *Terrell R.*

and *Becerra* dealt with the placement of a child in a foster home, both cases found that immunity

was proper for such a decision under § 820.2, and both cases dealt with § 16501.1.  See Terrel

R., 102 Cal.App.4th at 640-41; Becerra, 68 Cal.App.4th at 1459.  However, these cases

specifically dealt with § 16501.1(c), and did not discuss the three Welfare Code sections

identified in the FAC.  The argument that the three Welfare Code sections identified in the FAC

do not impose § 815.6 mandatory duties should have been expressly made in the original motion

to dismiss, especially since breach of a mandatory duty is expressly alleged and the Welfare Code

sections are expressly identified.

    Given that § 820.2 and § 821.6 immunity is not appropriate for the breach of a § 815.6

mandatory duty, that *Terrell R.* and *Becerra* do not involve the three identified Welfare Code

---

specific child or children. Placement is based on the child's needs and best interests.

21

sections, and that the County Defendants did not argue in their original motion that the identified Welfare Code sections do not create mandatory duties, the Court does not believe that the issue of whether Welfare Code §§ 16501.1(e), 16501.1(f)(13), and § 16507.5 create § 815.6 mandatory duties has been sufficiently raised or brief.  Accordingly, the Court will deny the motion to dismiss the second cause of action at this time.

## DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT

### *Defendant's Argument*

County Defendants argue that the complaint is too vague for it frame an appropriate response.  In particular, the allegations that Sarah has been denied meaningful access to the courts and that Sarah has been placed in a worse legal plight without sufficient specificity, and "allege certain events and actions but fails to allege when these events and/or actions took place."  Thus, the complaint is unduly vague and unintelligible such that a more definite statement is appropriate.

### *Plaintiff's Opposition*

Sarah argues that the County Defendants have ample notice as to what causes of action they face and have enough information to formulate a response.  Each cause of action has been listed, the elements of each cause of action are in the complaint, and each defendant who is expected to respond to the first cause of action is specifically named.  This is sufficient and the motion should be denied.

### *Legal Standard*

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e); Thompson v. City of Shasta Lake, 314 F. Supp. 2d 1017, 1022 (E.D. Cal. 2004).  A Rule 12(e) motion is "ordinarily restricted to situations where a pleading suffers from unintelligibility rather

than want of detail, and if the requirements of the general rule as to pleadings are satisfied and the opposing party is fairly notified of the nature of the claim such motion is inappropriate." Castillo v. Norton, 219 F.R.D. 155, 163 (D. Ariz., 2003); Sheffield v. Orius Corp., 211 F.R.D. 411, 414-15 (D. Or. 2002); Tilley v. Allstate Ins. Co., 40 F.Supp.2d 809, 814 (S.D. W. Va 1999); see also Resolution Trust Corp. v. Gershman, 829 F.Supp. 1095, 1103 (E.D. Mo. 1993) ("Rule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail."). Rule 12(e) motions "are not favored by the courts 'since pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim.'" Castillo, 219 F.R.D. at 163; Resolution Trust Corp. v. Dean, 854 F.Supp. 626, 649 (D. Ariz. 1994). "If the moving party could obtain the missing detail through discovery, the motion should be denied." Davison v. Santa Barbara High School District, 48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998). Rule 12(e) motions are "not to be used to assist in getting facts in preparation for trial as such; other rules relating to discovery, interrogatories and the like exist for such purposes." Castillo, 219 F.R.D. at 163; Sheffield, 211 F.R.D. at 415; Tilley, 40 F.Supp.2d at 814. "[A]bsent special circumstances, a Rule 12(e) motion cannot be used to require the pleader to set forth "the statutory or constitutional basis for his claim, only the facts underlying it."" Thompson, 314 F.Supp.2d at 1022 (quoting McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir.1990)).

### *Discussion*

The County Defendants make no reply to Sarah's opposition to their Rule 12(e) motion. Although some allegations could be more clear or more precise, the FAC is not so vague or unintelligible that a response cannot be formulated. The Court does not see why the County Defendants could not obtain the missing detail through discovery. Because the Court does not find the FAC to be so vague that no response could reasonably be formulated, or that discovery could not otherwise supply missing details, the Court will deny the County Defendants's motion. Thompson, 314 F.Supp.2d at 1022; Castillo, 219 F.R.D. at 163; Davison, 48 F.Supp.2d at 1228.

**CONCLUSION**

The County Defendants move to dismiss the First, Second, Fifth, and "Seventh" causes of action.  Dismissal of the Fifth action (42 U.S.C. § 1983), is not appropriate at this time because the FAC indicates that the County Defendants played in active role in placing Sarah with Gonzalez and thus, created a danger of abuse.  Dismissal of the claims against the County in the First cause of action for direct liability is appropriate because no statutes that impose duties on the County are identified.  Dismissal of first cause of action as to the remaining County Defendants under § 820.2 immunity is not appropriate at this time because the Court cannot say at this time that the County Defendants made discretionary decisions for purposes of § 820.2.  Dismissal of the second cause of action is not appropriate at this time because immunity under § 820.2 and § 821.6 do not apply to breaches of mandatory duties under § 815.6, and because the County Defendants have not adequately raised or briefed the issue of whether Welfare Code §§ 16501.1(e), (f)(13), or 16507.5 create § 815.6 mandatory duties.  Dismissal of the "Seventh" cause of action as to the County Defendants is appropriate because Sarah has not alleged that the County Defendants interfered with her rights through rights through "threats, intimidation, or coercion."  Finally, the County Defendants have not sufficiently shown that the FAC is so vague or unintelligible that no response can be framed, or that the complained of missing details cannot be obtained through discovery.


Accordingly, IT IS HEREBY ORDERED that:

1.   County Defendants's motion to dismiss the first cause of action is GRANTED in that the claims of direct liability against the County are DISMISSED without prejudice, but the remainder of the motion to dismiss first cause of action is DENIED;

2.   County Defendant's motion to dismiss the second cause of action is DENIED;

3.   County Defendant's motion to dismiss the Fifth cause of action is DENIED;

4.   County Defendant's motion to dismiss the "Seventh" cause of action is GRANTED

1    without prejudice;

2    5.    County Defendant's motion for a more definite statement is DENIED;

3    6.    Plaintiff may file an amended complaint within fourteen (14) days of service of this order;

4          and

5    7.    If Plaintiff does not file an amended complaint, the County Defendants are to file an

6          answer to the FAC within twenty-one (21) days of service of this order.

7

8

9    IT IS SO ORDERED.

10   **Dated:    November 29, 2006              /s/ Anthony W. Ishii**
     0m8i78                                UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                            25